OPINION
This appeal is taken by defendant-appellant Samuel Reed from the judgment convicting him of robbery entered by the Court of Common Pleas of Hancock County.
On November 3, 1998, Samuel K. Reed, appellant, was indicted by the Hancock County Grand Jury for a violation of R.C. 2911.02
(A)(3), robbery, a felony in the third degree. Trial was originally set for January 11, 1999. On January 11, 1999 due to a snow emergency that closed the courthouse and delayed a previously scheduled trial, the trial court continued Reed's trial until January 19, 1999, the ninetieth day after Reed's arrest. The courthouse was again closed due to snow emergency on January 13 and 14. As a result, on January 19, 1999, the previously scheduled trial had not concluded so the trial court continued commencement of Reed's trial until the next day, January 20, 1999. On January 20, 1999 Reed filed a motion to dismiss claiming a violation of his statutory right to a speedy trial. That motion was overruled by the trial court and Reed's trial began on January 20, 1999. After 2 days of trial Reed was found guilty of robbery. On appeal from that conviction Reed makes the following assignments of error:
 1. The trial court erred in overruling the defendant's motion for discharge based on the violation of defendant's speedy trial rights where the trial occurred on the 92nd day after arrest.
 2. The trial court erred in overruling the defendant's challenge to the State's use of its peremptory challenge to excuse the only minority member of the prospective jury panel.
 3. The trial court erred in overruling the defendant's motion for a mistrial upon discovery of a seated juror's prior knowledge of a witness for the State.
 4. The trial court erred in allowing the State to play the 9-1-1 audio tape during the State's case in chief as the tape contained inadmissible hearsay and was utilized without proper foundation.
 5. The verdict of guilty was against the manifest weight of the evidence and the State produced insufficient evidence where the testimony of the only eyewitness contained numerous inconsistencies and the State failed to produce any corroborating physical evidence.
Reed initially claims that the trial court violated his right to a speedy trial. R.C. 2945.71(C)(2) requires that a person charged with a felony must be brought to trial within 270 days after his arrest. When computing time under R.C. 2945.71(C)(2) "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C.2945.71(E) In addition, Criminal Rule 45(A) requires:
 "* * * the date of the act from which the time begins to run shall not be included. * * * the last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not Saturday, Sunday, or legal holiday."
The provisions of R.C. 2945.71 et seq. are mandatory and must be strictly complied with by the trial court. State v. Pudlock
(1975), 44 Ohio St.2d 104 However, R.C. 2945.72 provides a list of limited exceptions to the strict mandates of the speedy trial. It reads:
 "The time within which an accused must be brought to trial, or in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 * * * (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."
There is no per se definition of what constitutes a "reasonable" delay. State v. Saffell (1988), 35 Ohio St.3d 90,518 N.E.2d 934. "Resolution of such a question depends on the peculiar facts and circumstances of a particular case."Id. at 91.
The record discloses that Reed was arrested on October 21, 1998. Reed was later indicted by the grand jury for one count of robbery on November 3, 1998. The trial was scheduled to begin on January 11, 1999. On January 11, 1999 the trial court continued the trial to January 19, 1999 the next date when trial would be feasible due to the closing of the courthouse on January 4 and 5 because of inclement weather. The courthouse was again closed on January 13 and 14 due to bad weather.
Reed claims that when counting the days spent in jail his right to a speedy trial had been denied because the trial did not occur until the ninety-second day of his incarceration. However, January 19, 1999 the day scheduled for the beginning of trial was, in fact, the ninetieth day of incarceration counting each day spent in jail as three and not counting Monday, January 18, 1999, as the last day because it was an official holiday. Upon arrival in court on January 19, 1999, a previously begun trial was still in progress. The court after commencing Reed's trial decided to delay jury selection until the following morning, January 20, 1999. Thus the court merely delayed voir dire for half a day. No error having been shown, Reed's first assignment of error is overruled.
Next Reed asserts that the State violated his equal protection rights by using peremptory challenges to exclude the only African-American on the jury panel. The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination by the state in the exercise of its peremptory challenges that work to exclude minority groups from service on juries. Batson v. Kentucky (1986) 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69, State v. Hernandez (1992) 63 Ohio St.3d 577. In order to prove purposeful discrimination the defendant must show that members of a cognizable racial group were peremptorily challenged and that the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude jurors on account of their race. Id. at 89.
Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for challenging the jurors. Hernandez at 582. The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause, rather the prosecutor need only articulate a race-neutral explanation related to the particular case to be tried. Id. at 582. Any conclusion by the trial court that the state did not possess discriminatory intent in the exercise of its peremptory challenges will not be reversed on appeal absent a determination that it was clearly erroneous. Id. at 583.
The record reveals that the State used a peremptory challenge to remove Mr. Lavell Jones from the jury. Upon exercise of that challenge, defense counsel objected arguing that Mr. Jones was the only African-American on the panel and the State was using a peremptory challenge to exclude him because of his race. The court then required the State to justify its challenge. The State responded as follows:
 "* * * the reason I preempted (sic) Mr. Jones, he does know of an (sic) either relative or close family member previously convicted of a crime, although he did answer that he can set that aside, I do question whether he will be able to separate himself from that issue. In addition, Mr. Galose asked him the question of whether police officers ever make mistakes and his answer was yes, certainly he seemed very much in agreement that, I didn't like either answer, and the basis of the reason I used peremptory to excuse him."
The court found that statement adequate and proceeded to overrule the objection of defense counsel.
The representations made by the State in the above explanation are supported by the record. While such concerns may not be enough to exclude a juror for cause they need not rise to that level. The representations made by the State were race-neutral and related to the case at hand. As a result, this court cannot say that the actions taken by the trial court in overruling the objection of defense counsel were clearly erroneous. No error having been shown, Reed's second assignment of error is overruled.
Reed next claims that the trial judge erred when he refused to order a mistrial after the court became aware that a juror knew a witness for the State. Events that may necessitate a mistrial occur at trial and are observed first hand by the trial court. As a result, the "the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." State v. Glover (1988) 35 Ohio St.3d 18,19. Indeed an "appellate court will not disturb the trial court's exercise of discretion absent a showing that the accused has suffered material prejudice." State v. Sage (1987) 31 Ohio St.3d 173.
The record discloses that after the State began its case-in-chief, one of the jurors reported to the court that she knew Shari Morse, a witness testifying on behalf of the State, whose name the juror did not recognize during voir dire. The court inquired of the juror about her bias, if any, and she indicated that she could continue to be impartial. The court was assured that the juror was still qualified. Despite this, defense counsel asked to inquire of the juror in chambers and subsequently moved for mistrial. The following dialogue occurred in chambers:
 The court: * * * The bottom line is can you disregard your prior association with this particular lady and judge the case solely on the evidence you heard in the courtroom, any exhibits, and my instructions of law or are you, because of this prior relationship, unable to do that?
 Juror: I believe I can be fair and impartial but that is up to you folks.
 The court: At this point you feel you can judge the evidence as it comes to you in the courtroom, leaving out any prior association?
Juror: I think so. Yes, I can.
* * *
Mr. Galose: * * * How long have you known Shari Morse?
 Juror: I think they started going to our church, she would have been in 4th grade and in 5th grade and in 6th grade I was her Sunday school teacher.
Mr. Galose: So you were also her Sunday school teacher?
Juror: Right.
 Mr. Galose: So you have known her for about what, 16 or 20 years?
 Juror: You see, I've lost track of her and I don't even know how old she is at this point or when she quit going to that church.
* * *
 The court: The bottom line isn't what Mr. Galose wants, it's whether or not you can render a fair and impartial verdict based upon the evidence in the courtroom, exhibits and my instructions. Do you feel you can do that?
Juror: Yes.
The court observed the juror during the discussion outlined above. After the inquiry, the court determined that the juror could be impartial and would disregard her prior association with the witness. Thus, the trial judge did not abuse his discretion by refusing to order a mistrial. No error having been shown, Reed's third assignment of error is overruled.
Reed next asserts that the trial court erred when it allowed a 9-1-1 audio tape to be played because it contained inadmissible hearsay and there was no proper foundation offered by the state for its admittance under an exception to the hearsay rule. Initially, we observe that the trial court has broad discretion in determining the admissibility of evidence. Evid.R. 104. Any error alleged in the admission of evidence may only be shown by establishing that the trial court abused its discretion.Metaullics Systems Company L.P. v. Molten Metal EquipmentInnovations, Inc. (1996), 110 Ohio App.3d 367, 674 N.E.2d 418. "The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149.
Generally, hearsay is inadmissible to prove the truth of the matter asserted. Evid.R. 801. However, there are several exceptions to this broad rule. Specifically, an excited utterance is admissible as an exception to the hearsay rule under Evid.R. 803(2), which states in pertinent part:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
 (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
The Supreme Court of Ohio has elaborated further on the definition of an excited utterance. To be an excited utterance and thus admissible the statement must concern:
 "some occurrence startling enough to produce a nervous excitement in the declarant, which occurrence the declarant had an opportunity to observe, and must be made before there had been time for such nervous excitement to lose a domination over his reflective faculties." State v. Huertas (1990), 51 Ohio St.3d 22, 31, 553 N.E.2d 1058, 1068, quoting paragraph two of the syllabus in Potter v. Baker (1955), 162 Ohio St. 488.
9-1-1 calls have been held to constitute excited utterances. Statev. Smith (1997), 80 Ohio St.3d 89; State v. Kinley (1995),72 Ohio St.3d 491.
The record reveals that the State introduced the 9-1-1 tape as an excited utterance. Before admitting the tape, the court required the State to show the 9-1-1 statement was indeed an excited utterance. To that end, the State offered the following testimony:
Officer Rozelle, 9-1-1 Operator
 Q: As far as the emotional state of the caller, can you elaborate on that?
 A: She was hysterical. She was sobbing. It was hard to understand what she was saying. I had to ask her to calm down so I could understand what she was saying. It was hard to figure out what she was trying to get across.
 Q: And in your conversation with the caller, were you able to ascertain how long ago the incident happened that she was calling about?
 A: It seemed that it had just happened because she was still in such an upset state.
Shari Morse, Victim
 Q: So you, after you had the conversation with him at the doorway and he let you leave, you went down and called 911?
A: Yes.
Q: Do you remember calling 911?
A: Yes.
Q: Can you describe your emotional state at that time?
 A: I was crying really hard. I was really upset and I was scared. I didn't know what he was going to do but I knew that he had my dead bolt off and he had my apartment keys so I was afraid he was going to come back.
The trial court considered the foregoing to establish that Shari Morse made her call while still under the stress of the robbery just concluded. As a result, Reed has shown no abuse of discretion. No error having been shown, Reed's fourth assignment of error is overruled.
In his final assignment of error Reed claims that the decision of the jury to convict was not supported by sufficient evidence and even if there was sufficient evidence it is still unjust because the weight of the evidence was in favor of acquittal. Initially, we observe that "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Indeed, a judgment may be reversed on the weight of the evidence only if there is a concurrence of all three judges hearing the cause on appeal. Section 3(B)(3), Article IV, Ohio Constitution.
The legal concepts of sufficiency of the evidence and weight of the evidence are different. "Sufficiency is a term of art meaning that the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 382. To reverse a judgment of a trial court when there is insufficient evidence to support it, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary. Id. at paragraph three of the syllabus.
A claim that the verdict was against the weight of the evidence does not mean that the evidence to convict was insufficient or inadequate. "Weight of evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing a claim that the conviction was against the manifest weight of the evidence the court considering the entire record:
 "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
The power to reverse a conviction and order a new trial is discretionary and should only be used in exceptional circumstances when the evidence weighs significantly against the conviction. Id.
at paragraph three of the syllabus.
The elements of robbery, a violation of R.C. 2911.02(A)(3) are (1) in attempting or committing a theft offense as defined in R.C. 2913.01, (2) use or threaten immediate use of force, (3) against another. State v. Lewis (1990), 75 Ohio App.3d 689.
The State offered the following testimony in favor of conviction on the charges of robbery:
Q. Now what happened when you saw the defendant?
 A. He ran up to me, he had asked me to unlock my doors. He wanted to get into my apartment, he tried to get my keys out of my pocket. I had them in my right pants pocket of my work pants and when I wouldn't give him the keys, he ripped my pants pocket in order to try to get my keys, but I had them in my hand tight. So he ripped my pocket be he still didn't get my keys.
* * *
 He had asked me again to open the door and I wouldn't so he grabbed the top of my arms and told me to unlock the door and otherwise he was not going to let me go. So at that time I unlocked my apartment door, the dead bolt and my apartment door.
* * *
 He pushed me into the apartment and I fell down to the floor and at that time he tried to grab my keys again. I was lying on my stomach on the floor and I had my keys. I was holding them underneath my stomach with both my hands as tight as I could. As he was trying to grab my keys out of my hand, my key ring had broke and he was able to get two of my keys, which was my apartment, the key to my apartment door and my car key.
* * *
 He went into the kitchen and he got, I believe it was a sharp knife and a pair of scissors and he walked into the living room toward the front door to start taking off the dead bolt to my front door.
* * *
 After he had the dead bolt off and he was holding the dead bolt, he had seen some papers I had laying on my coffee table right there behind him. One was my birth certificate and a copy of an application I had to apartments and there was also a letter from a friend who was a male friend, which he picked up, and he picked up all three of those and he read the letter.
* * *
 Q. When you went back up to the apartment, were you able to find the birth certificate?
A. No
Q. Were you able to find the application?
A. No
Q. Were you able to find the letter?
A. Yes. It was ripped up.
Q. Were you able to find the dead bolt?
A. No.
Q. So all those items were missing?
A. Yes.
 Q. Did you ever give Sam permission to take that birth certificate, * * * apartment application, * * * dead bolt from your door?
A. No.
In addition, the State offered testimony by Officer Rozelle and Officer Routson to corroborate in part that given by the victim.
The testimony heard by the jury demonstrates that Reed in fact confiscated several items from the home of Shari Morse without her permission. He did so by grabbing her, throwing her down on the ground, and ripping the keys from her hands. As a result, we hold that the evidence offered to convict Reed of robbery is sufficient.
Reed also claims that as a whole, the manifest weight of the evidence supported an acquittal not a conviction. Conflict between the testimony of different witnesses is resolved by determining which of the witnesses is to be believed. The assessment of credibility of witnesses is a jury function. As a result, it must be remembered that the jury at trial heard all of the evidence, was instructed as to the law and found Reed guilty beyond a reasonable doubt.
The foregoing portions of the record, present credible testimony that if believed, disbelieving the conflicting testimony, supports a finding of defendant's guilt beyond a reasonable doubt and thus conviction, rather than acquittal. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore we do not conclude that the jury lost its way or that by its verdict has caused a miscarriage of justice. No error having been shown, Reed's last assignment of error is also overruled and the judgment of the Court of Common Pleas of Hancock County is affirmed.
Judgment affirmed.
 SHAW and WALTERS, JJ., concur.