OPINION
Juan Antonio Lamar Kinley appeals from a judgment of the Clark County Court of Common Pleas, which denied his petition for postconviction relief.
On March 19, 1991, a three-judge panel convicted Kinley of the aggravated murders of Thelma Miller and her twelve-year-old son David and sentenced him to death. The Millers had been hacked to death with a machete on January 10, 1989 in the garage of Richard and Elaine Szulewski, for whom Thelma worked as a housekeeper. Kinley's conviction was affirmed by both this court, State v. Kinley (June 24, 1993), Clark App. No. 2826, unreported, and the Supreme Court of Ohio, State v. Kinley
(1995), 72 Ohio St.3d 491.
Kinley filed a petition for postconviction relief pursuant to R.C.2953.21 on September 20, 1996. The trial court dismissed his petition without a hearing. Kinley appealed, and we reversed the trial court's decision in part, remanding for a hearing "on Kinley's claim that he waived his right to a jury trial in exchange for expert testimony and on his claim that two witnesses [Donald Merriman and Victor Bishop] committed perjury at trial." State v. Kinley (1999), 136 Ohio App.3d 1,21. The trial court held an evidentiary hearing on February 21 and 22, 2001. Kinley withdrew his claim regarding Bishop's perjury but presented evidence on the remaining two claims. Following the hearing, the trial court denied Kinley's petition on May 21, 2001. Kinley appeals to this court, raising one assignment of error.
 THE TRIAL COURT ERRED IN DISMISSING THE REMAINING PORTION OF APPELLANT'S FIRST GROUND FOR RELIEF WHEN IT FAILED TO RENDER AN ACCURATE FACT FINDING AND BASED ITS DISMISSAL ON UNSUPPORTED AND FLAWED LEGAL ANALYSIS.
 Despite the wording of his assignment of error, Kinley does not argue that the trial court erred in applying the law. Rather, Kinley argues that the trial court did not reach the appropriate factual conclusions after weighing the evidence.
The trial court concluded that Kinley had not carried his burden under R.C. 2953.21. Since a post-conviction relief proceeding is civil in nature, a trial court's decision is not against the manifest weight of the evidence provided it is based on competent, credible evidence. SeeState v. Wombold (Feb. 19, 1999), Montgomery App. No. 17191, unreported, at *3, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. In this regard, it is the duty of the trial court to judge the credibility of witnesses and determine the weight to be given their testimony. See id., citing State v. DeHass (1967), 10 Ohio St.2d 230,231. An appellate court may not substitute its judgment for that of the trial court regarding the credibility of testimony. See State v.Lillard (Oct. 24, 1997), Miami App. No. 97CA10, unreported, at *2.
We are essentially presented with a case in which the trial court was required to make a credibility determination. While we believe that the trial court could have found in favor of either party based on the evidence, the court found that the state's version of events was the more credible. Because we find that the court's decision was supported by competent, credible evidence, we must conclude that the trial court's decision was not against the manifest weight of the evidence.
Kinley first argues that he was compelled to waive his right to a jury trial in order to receive funding to obtain a psychologist to testify at the sentencing phase of his trial. To support this claim, Kinley called his former defense attorney John Butz to testify at the hearing. Butz testified to the following. Kinley's defense attorneys, Butz and Noel Kaech, filed a motion requesting funding for a mitigation specialist and a psychologist on November 5, 1990. The prosecution filed a memorandum in opposition to the funding request. A hearing was held on the issue on January 14, 1991, at which the defense attorneys continued to argue the necessity of the two expert witnesses. Additional memoranda were filed by both parties on January 17. Eventually, on January 23, the trial judge, Gerald Lorig, overruled the motion.
The state eventually agreed to the funding of a mitigation specialist, and Judge Lorig then approved the funding. However, defense counsel continued to argue for funding for a psychologist. Sometime in early 1991, at least one meeting was held in Judge Lorig's chambers to discuss this issue. Butz testified that he had suggested that Kinley might be willing to waive his right to a jury trial, and that, by the end of the meeting, the prosecution had ceased their opposition. Kinley waived his right to a jury trial on February 19, 1991, and the trial court granted his request for funding for a psychologist on February 20. According to Butz's testimony, the parties had agreed that Kinley would waive his right to a jury trial in exchange for the state's agreement to cease opposition to the funding of a psychologist. Butz further testified that he had suggested the jury trial waiver because he had believed it was the only way to get the state to agree to the funding request. Kinley also introduced an affidavit from former defense counsel James Doughty, which stated essentially the same things as Butz's testimony.
The state called several witnesses. Judge Lorig testified and denied that the jury waiver had been the reason he granted the request for funding of the psychologist. He stated that he had granted the funding request because he had become convinced of its necessity. Stephen Schumaker, one of the prosecutors on the case, testified that the prosecutors had withdrawn their opposition to the funding request because they had wanted to eliminate a potential appellate issue and because Butz had agreed to give them a copy of the psychologist's report. He testified that the state had initially opposed the funding because it had wanted a copy of the report. Schumaker also testified that he would have preferred to try the case to a jury because he had had a bad result in trying a different case, State v. Sodders, to a three-judge panel. The other prosecutor on the case, David Smith, also testified that the state had withdrawn its opposition for the two reasons stated above. Like Schumaker, Smith testified that he would have preferred to try the case to a jury.
Smith also testified that Doughty had discussed with him three factors in favor of waiving a jury trial. These were (1) the gruesome nature of the case, (2) the fact that Kinley was black and the Millers were white, and (3) the age of David Miller. Judge Lorig's bailiff, Dora Gibson, testified that Butz had told her after the trial that they had waived a jury "because of the nature of the photographs." Stephen Collins, a prosecutor who was not on the case, testified that he had discussed the case with Butz after the supreme court's affirmance, at which time Butz had told him: "There wasn't any way that they could take that to a jury given the gruesome nature of that offense and that their only shot really that they felt in avoiding the death sentence was with a three-judge panel."
In this appeal, Kinley attempts to undermine the credibility of the state's witnesses. He quotes the following from Judge Lorig's 1996 affidavit:
 When defense counsel originally moved for a court appointed mitigation specialist and court appointed psychologist for investigation, and the State opposed these requests, I overruled the motions. * * * Subsequently, during a meeting with counsel in chambers, defense counsel again requested funds for the psychologist for mitigation and counsel for the State indicated that the State was not opposed to the appointment. I granted the motion.
 Kinley further argues that, even though Schumaker now contends that the state opposed funding because it wanted a copy of the psychologist's report, there was no mention of that reason in their 1991 opposition to the funding. He notes that affidavits from Judge Lorig and from David Smith in 1996 made no mention of this reason. With regard to Schumaker's stated preference for a jury, Kinley argues that the Sodders
case, in which Schumaker allegedly had a bad result with a three-judge panel, was a case in which the defendant pled guilty and in which there was no trial. Finally, Kinley argues that the testimony of Stephen Collins, Dora Gibson, and David Smith was not credible. He asserts that, because Gibson was Judge Lorig's bailiff throughout the case and Collins worked with Schumaker and Smith in a small prosecutor's office, it is incredible that neither of them ever brought the alleged conversations with Butz to the attention of the prosecutors on the case. He further asserts that Smith said nothing about his alleged conversation with Doughty until Doughty was incapacitated and unable to contradict him. Butz also testified that he had taken other gruesome cases to a jury and could have taken this one.
With regard to Schumaker's stated preference for a jury, the state agrees that the Sodders case was one in which the defendant pled guilty. However, the state points out that, when a defendant pleads guilty in a capital case, the state must still present evidence to establish that the offense warrants imposition of the death penalty. Furthermore, Schumaker testified that the result favorable to the defendant in the Sodders case was another reason why Kinley might have wanted a three-judge panel.
As stated above, we find that the trial court's decision in favor of the state was not against the manifest weight of the evidence. Kinley's argument essentially relies on 1) Butz's testimony and 2) the suspicious timing of the jury waiver and the order granting funding for a psychologist. However, the state presented ample evidence that there was no trade. Schumaker and Smith both testified that they opposed the funding for other reasons and that they would have preferred a jury trial. Finally, the state presented evidence that the defense had other reasons to waive a jury trial. Kinley's attempts to undermine the credibility of the state's testimony fall short. While we do not know why there is no mention of the state's desire for a copy of the psychologist's report in their 1991 memoranda opposing the funding, the fact that it was an issue can be inferred from the fact that Butz eventually agreed to give the prosecutors a copy. Gibson, Collins, and Smith had no reason to mention Butz's and Doughty's comments regarding why the defense waived a jury until the postconviction hearing because it was not an issue until then. Furthermore, we have reviewed the photographs that were introduced as exhibits at the hearing, and it is plausible that a defense attorney would consider waiving a jury trial based on the atrocity of this case. Finally, as the state noted, when a defendant pleads guilty in a capital case, the state still has to prove that the death penalty is warranted. Clearly the three-judge panel in Schumaker's prior case concluded that the death penalty was not warranted; thus, Schumaker could have felt that in that case he had had a bad result with a three-judge panel.
While we agree with the defense that the timing of Judge Lorig's approval of funding was suspicious, that alone is not sufficient for us to conclude that the state's evidence was not credible. There appears to be a factual issue regarding whether Judge Lorig based his original decision denying funding for a psychologist solely on the state's opposition. If this were the case, that would be error on Judge Lorig's part because the trial court is required to use its discretion to determine whether expert services are reasonably necessary for the proper representation of the defendant, considering the value of the expert assistance to the defense and the availability of alternative devices. R.C. 2929.024; State v.Jenkins (1984) 15 Ohio St.3d 164, paragraph four of the syllabus. However, as we have stated previously, we find that the trial court's decision that there was no trade was supported by competent, credible evidence. Because the trial court reasonably found that Kinley was not forced to trade his right to a jury trial for a psychologist and because Kinley did receive funding for a psychologist, any error by Judge Lorig in originally basing his decision to deny funding on the state's opposition — a decision Judge Lorig eventually reconsidered in Kinley's favor — was harmless. Accordingly, we conclude that the trial court did not err in overruling Kinley's petition for postconviction relief on his claim that he was forced to waive a jury trial in order to obtain funding for a psychologist.
Kinley's second argument is that the trial court erred in not granting him relief on his claim that one of the witnesses, Donald Merriman, committed perjury at Kinley's trial. Merriman testified at Kinley's trial that Kinley had confessed to him that he had killed his girlfriend and her son. Merriman was the only person to whom Kinley allegedly confessed the crime. Kinley argues that Merriman perjured himself at Kinley's trial in exchange for leniency from the state in connection with sentencing on a conviction for grand theft. In support of this contention, Kinley introduced two affidavits signed by Merriman, in which he stated that he had lied at Kinley's trial and had done so in order to obtain leniency from the state. The affidavits were procured by Assistant State Public Defender Kathryn Sandford, who visited Merriman in prison in connection with the postconviction proceedings. Kinley also notes that Merriman received only sixty days in jail on a charge that carried a maximum of eighteen months and that this was despite his not originally appearing for his sentencing on February 28, 1991. Furthermore, Kinley contends that nothing was done to compel Merriman to appear. It was during this time that Merriman testified at Kinley's trial, but he was not arrested at that time. He was finally brought in for sentencing on May 15, 1991, at which time he was given sixty days when the prosecutor on the case, Darnell Carter, reminded Judge Lorig that Merriman had testified in Kinley's case. Kinley's attorneys were unable to locate Merriman to have him testify at the postconviction relief hearing.
The state, in an affidavit by Smith, one of the prosecutors on Kinley's case, denied that Merriman was promised leniency in exchange for his testimony. Carter testified that he had not known Merriman was going to testify at Kinley's trial and that he had arranged for Merriman to turn himself in when he had seen him at the barber shop. Carter even testified that, due to Merriman's failure to appear for sentencing, he had been inclined to recommend more than the six months he had intended to recommend. However, upon being made aware of Merriman's testimony in Kinley's trial, Carter decided to recommend six months. Judge Lorig then decided to sentence Merriman to sixty days.
Also, in 1997, Schumaker, Smith, Carter, and Collins visited Merriman in prison. Schumaker, Smith, and Collins testified that they had questioned Merriman regarding the two affidavits and that he had told them that his trial testimony had been true and that he had signed the affidavits because Sandford had "played upon his conscience" and so Sandford would leave him alone. Smith and Schumaker also testified that they had told Merriman that he did not have to worry about perjury charges.
As with Kinley's first argument, we are dealing with a credibility determination by the trial court. Kinley's argument relies on 1) Merriman's affidavits and 2) the suspicious nature of Merriman's sentencing. However, the state presented evidence that Merriman had recanted his affidavits. Also, two prosecutors, Carter and Smith, denied that there was a deal. Kinley attempts to impeach the credibility of Merriman's statements to the prosecutors, arguing that Merriman would have been afraid of perjury charges when talking to the prosecutors. However, Schumaker and Smith testified that they told him he did not have to worry about perjury charges. Kinley attempts to impeach Carter's credibility by arguing that he allowed Merriman to remain at liberty despite his surfacing to testify in Kinley's trial and despite seeing Merriman at a barber shop. However, Carter testified that he had not known Merriman was going to testify. To impeach Carter's testimony, we have only Kinley's speculation that Carter must have known Merriman was going to testify given the small close-knit nature of the prosecutor's office. However, this is not sufficient for us to second guess the trial court's conclusion that Carter was credible.
As with Kinley's first argument, the trial court could have decided in favor of either side based on the evidence. However, the trial court determined that the state's evidence was more credible. Without being able to observe Merriman on the stand, the trial court was left with weighing Merriman's testimony at trial and his statements to the prosecutors while he was in prison against his affidavits recanting his trial testimony, the admissibility of which is questionable. Even assuming that the affidavits were admissible, we cannot find that the trial court erred in deciding that the evidence presented by Kinley did not prove that Merriman had lied at trial or that the state had promised him leniency. Clearly, Merriman has lied at least once regarding Kinley. However, it is impossible for this court to determine which of Merriman's statements were lies and which were the truth. Furthermore, while there is evidence that Merriman was given a lighter sentence after the fact because of his testimony, there is no evidence of a promise of leniency to Merriman prior to his testimony. The trial court decided that Merriman's affidavits were not credible and concluded that his trial testimony was credible. Such credibility determinations are within the discretion of the trial court. We therefore find that the trial court's decision was not against the manifest weight of the evidence on Kinley's claim that Merriman gave perjured testimony at Kinley's trial.
Kinley's assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, J. and YOUNG, J., concur.