OPINION
Defendant Jeremy McCombs appeals the judgment and sentence of the Marion County Court of Common Pleas, finding him guilty of one fifth-degree felony count of Domestic Violence and sentencing him to a three-year community control sanction.
In the late morning of December 15, 1999, the Marion Police Department received two 9-1-1 calls from two separate residences located at 1041 Bellefontaine Ave. The first call was received from a residence occupied by the defendant and Cynthia McIntire, the victim in this case. A short conversation ensued between a man at the residence and 9-1-1 operator Adam Willauer before the connection was broken. While attempting to reestablish a connection with defendant's residence, operator Willauer received another 9-1-1 call from the nearby residence of Peggy Meadows. During that call, operator Willauer spoke with a woman who stated that she had just been beaten up and needed an officer.
Ms. Meadows later testified that shortly before the call was placed, Cynthia McIntire had run into her (Ms. Meadows') residence. Ms. Meadows stated that Ms. McIntire was wearing only a bra and pants, was not wearing shoes, and was crying. Ms. Meadows also stated that that Ms. McIntire "was bruised. I believe she had two black eyes. She had marks on her neck." Transcript, at *77. Ms. Meadows also testified, without objection, that Ms. McIntire "said that he had beat her up and she wanted to know if she could call the police and I told her, yes." Id. at *78.
Within six minutes of the original 9-1-1 call, Marion Police Department Patrolman Andrew Burdick arrived on the scene and spoke with Ms. McIntire at Ms. Meadows' residence. Patrolman Burdick testified that Ms. McIntire was bruised, scraped, and crying, and also that she was upset and pacing. Id. at *121-22. Patrolman Burdick later testified, over defendant's objection, that Ms. McIntire told him that she had been beaten up by defendant Jeremy McCombs. Id. at *124. Patrolman Burdick also photographed Ms. McIntire's injuries, but testified at trial that the "photographs [did not] fully reflect the extent" of Ms. McIntire's injuries.
Defendant was arrested and charged with two fifth degree felony counts of domestic violence in violation of R.C. 2919.25(A). Although the State subpoenaed Ms. McIntire to testify at defendant's trial, she failed to appear. Instead, the State presented out of court statements she had made through the testimony of Peggy Meadows and Patrolman Burdick.
During jury selection, the trial court made a decision to "forego an alternate [juror] today, that way we can perhaps move along a little bit quicker." Id. at *61. Although both defendant's counsel and the prosecutor requested the trial court to seat an alternate, neither objected to the court's decision not to do so. During a break in trial, one of the twelve jurors who had been seated became aware that she had previously met Ms. McIntire. Although the court offered to declare a mistrial, the defendant agreed on the record to proceed with eleven jurors.
Following the close of the State's case, one of the charges was withdrawn. The case was submitted to the jury, who returned a judgment of conviction on the single count of felony domestic violence. On August 4, 2000, the trial court sentenced the defendant to a three year community control sanction. Defendant now appeals, and asserts five errors with the proceedings in the trial court. We will address defendant's first four assigned errors together, as all four address evidentiary rulings by the trial court.
 The trial court erred to the prejudice of Defendant-Appellant by admitting hearsay evidence from Peggy Meadows.
 The trial court erred to prejudice of Defendant-Appellant by admitting hearsay evidence from the arresting officer.
 The trial court erred to the prejudice of Defendant-Appellant by admitting the 911 tape.
 The trial court erred to the prejudice of Defendant-Appellant by admitting photographs of the victim.
 Trial courts have broad discretion over evidentiary rulings. See State v. Kinley (1995), 72 Ohio St.3d 491, 497, citing State v. Apanovitch (1987), 33 Ohio St.3d 19, 25 ("A trial court has broad discretion in the admission and exclusion of evidence."). Thus, the court's judgment relating to defendant's first four assigned errors will not be disturbed absent a showing of an abuse of discretion. See State v. Williams
(1996), 74 Ohio St.3d 569, 576; State v. Mack (1995), 73 Ohio St.3d 502, 511. An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466, 470; State v. Moreland (1990), 50 Ohio St.3d 58, 61; State v. Adams (1980), 62 Ohio St.2d 151, 157.
Defendant's first two assignments of error assert that the testimony of Peggy Meadows and the testimony of Patrolman Andrew Burdick contain inadmissible hearsay statements made by Ms. McIntire, and that the defendant's conviction is based upon this inadmissible hearsay. While the defendant's brief does not specifically identify the statements to which he objects, our review of the record indicates that the defendant's neighbor Peggy Meadows testified that Ms. McIntire stated that "he" had physically assaulted her (Ms. McIntire), and Patrolman Burdick testified that the victim stated that the defendant had assaulted her.
It is generally true that an out-of-court statement may not be offered into evidence to prove the truth of the matter asserted. See Evid.R. 801; Evid.R. 802. However, the operation of the hearsay rule is subject to multiple exceptions in this case, the State contends that the challenged statements fall within one of the exceptions stated in Evid.R. 803.
 (1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.
 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 Evid.R. 803(1-2). Reviewing the defendant's arguments, we cannot say that the trial court abused its discretion by admitting the hearsay statements. Both Peggy Meadows and Patrolman Burdick testified that Ms. McIntire was agitated, crying, and generally under a significant amount of stress. Because it appears that Ms. McIntire was under the stress of the domestic violence incident, the trial court did not err in concluding her statements were the product of reactive rather than reflective thinking and were therefore admissible as excited utterances under Evid.R. 803(2). See State v. Taylor (1993), 66 Ohio St.3d 295, 300. Moreover, her statements were also sufficiently close in time to the incident and were made under circumstances — fleeing from her residence, attempting to contact the police, and under direct police questioning — that the trial court could reasonably conclude that they were "present sense impressions" under Evid.R. 803(1). Cf. State v. Barnd (1993), 85 Ohio App.3d 254, 261.
Defendant also contends that the trial court erred by allowing the 9-1-1 tapes to be played for the jury because they were not relevant. Defendant argues that the trial court allowed the tape to be played to "show why the police or dispatcher sent * * * law enforcement officers to that location." Transcript at *94. Defendant contends that the reason the officers were sent to the location has no impact upon the defendant's culpability for the offense, and the tape should therefore been excluded under Evid.R. 401, which reads:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
 We note that relevancy determinations are best made by the trial judge, who is in a position to analyze the impact of the evidence on the jury. See, e.g., Renfro v. Black (1990), 52 Ohio St.3d 27, 31, rehearing denied 53 Ohio St.3d 710. Here, we conclude that the trial court did not abuse its discretion in allowing the tapes to be played. See, e.g., Nielsen v. Meeker
(1996), 112 Ohio App.3d 448, 450. The tapes directly address the question of whether a domestic violence incident had been reported to the police, and therefore had the tendency to show a fact of consequence to the action was "more probable or less probable."
Defendant also contends that the trial court erred by admitting the photographs the police took of the defendant. Defendant argues that Patrolman Burdick testified that the photographs that the "photographs [did not] fully reflect the extent" of Ms. McIntire's injuries and "didn't truly reflect what was there." Transcript at *137.
 [A]t the time we were using these disposable 35 millimeter cameras. We were trying something new at the department. It seemed like it [was] more effective to use those rather than to burn canisters of film. Uh, from instances like this, we — we noticed that we could not — you could not get a good photograph how — however, accurate representation of a up-close photo it wasn't very good. I mean you could see vaguely what you were taking the picture of. Like if you were trying to take a picture of a scratch, for instance, like on the victim's neck, you might be able to see a hint of something but it didn't truly reflect what was there.
 Id. Defendant correctly notes that "[a] photograph is [only] admissible in evidence if it is shown to be an accurate representation of what or whom it purports to represent," e.g., State v. Hannah (1978), 54 Ohio St.2d 84, 88, and argues that the foregoing testimony indicates that the photographs of Ms. McIntire and her injuries were inadmissible.
We disagree. When accompanied by the foregoing testimony from Patrolman Burdick, the relevance of the photographs to this case is clear. Moreover, the State correctly points out that Patrolman Burdick's testimony establishes the photographs do accurately portray Ms. McIntire herself and the locations of her alleged injuries. See Transcript at * * 139-43. We therefore cannot say that the trial court abused its discretion by admitting the photographs into evidence. Cf. State v.Robb (2000), 88 Ohio St.3d 59, 171-72.
For the foregoing reasons, defendant's first four assignments of error are overruled.
 The trial court erred to the prejudice of Defendant-Appellant by not selecting an alternate juror.
In his fifth assignment of error, defendant argues that the trial court erred by failing to select an alternate juror and proceeding with an eleven-person jury when one of the jurors had to be excused. Crim.R. 23(B) plainly states that "[i]n felony cases juries shall consist of twelve." However, in State exrel. Warner v. Baer (1921), 103 Ohio St. 585, the Ohio Supreme Court noted that the while the Ohio Constitution confers a jury trial right, "this right may be waived, and accused persons may, with the approval of the court, consent to be tried by a jury composed of less than 12 men." Id. at paragraph two of the syllabus; see also State v. Brooks (March 30, 2000), Cuyahoga App. Nos. 75711 75712, unreported, 2000 WL 337600 at * * 5-6 (holding that felony defendants had impliedly waived claim that they were convicted by an eleven person jury and concluding that the claim did not rise to the level of plain error). Moreover, in State ex rel. City of Columbus v.Boyland (1979), 58 Ohio St.2d 490, the Supreme Court noted that the Criminal Rule 23(B) "in no way attempts to alter a defendant's substantive constitutional right to trial by jury. It merely prescribes the method by which the substantive right is to be exercised." Id. at 492-93. Therefore, while Crim.R. 23(B) clearly implements the constitutional right to a jury of twelve for felony cases, that right may be waived by "consent" and "with the approval of the court." Baer, 103 Ohio St. 585 at paragraph two of the syllabus. Here, the defendant expressly waived his right to a twelve member jury on the record.
 THE COURT: * * * * Mr. McCombs, you need to understand that you have a right to have a trial by jury of twelve people, and if you so desire, then the Court would make the necessary rulings.
 JEREMY A. McCOMBS: What rulings?
 THE COURT: Well, I would have to rule on whether or not to exclude this particular juror. My inclination would be to do so.
 JEREMY A. McCOMBS: And then what would happen?
 THE COURT: Well, then we would have a jury of eleven if both sides are not in agreement, we would declare a mistrial. We would start over from — retry the entire case.
 JEREMY A. McCOMBS: Okay. (Nods head affirmatively)
 THE COURT: Of course that will give the State more opportunity to try to locate Cynthia and bring her here.
 JEREMY A. McCOMBS: It will take more time for it to happen and all this.
 THE COURT: It would have to be rescheduled for a later date.
 JEREMY A. McCOMBS: I'm ready to go with the, eleven, sir.
 THE COURT: Mr. Lowther.
 [DEFENDANT'S COUNSEL]: We'd ask the Court to proceed with eleven jurors.
Transcript, at * * 205-06. As the foregoing text illustrates, after questioning from the Court and on advice of his counsel the defendant elected to waive his right to a twelve member jury, and we cannot say that the trial court erred by allowing him to do so. Cf. State v. Brooks, unreported at * * 5-6. Defendant's fifth assignment of error is accordingly overruled, and for all the foregoing reasons the judgment of the Marion County Court of Common Pleas is affirmed.
 __________________________ SHAW, J.
 WALTERS and BRYANT, JJ., concur.