OPINION
On August 18, 2000, Eric G. Fleming was convicted of murdering his quasi estranged girlfriend, Armanthua Beckwith, as she entered her car after leaving work. Fleming stated that he went to Wogamon School where Beckwith was employed as a custodian with the intention of killing himself in front of Beckwith to "embarrass her." He was waiting outside the school when Beckwith and a co-worker, Douglas Wood, exited at approximately 10:00 P.M. on November 1, 1999. However, the sight of Beckwith leaving the school "with" another man made him angry, and he "just blew it." He approached the car and began firing, shooting at least four times, one shot directly entering her left temple. Fleming then left the scene in his vehicle and Douglas Wood ran to a nearby house to call 911. Fleming has appealed his conviction raising the following five assignments of error:
 I. The gun specification must be reversed because the trial court misinstructed the jury about the elements of the offense.
 II. The trial court committed prejudicial error when it refused appellant's request to instruct on the lesser included offense of voluntary manslaughter.
 III. The trial court denied appellant a fair trial under the state and federal constitutions when it refused to instruct the jury that anger could negate the purpose element in a murder charge.
 IV. The trial court committed prejudicial error and violated the Due Process Clause of the United States Constitution when it admitted evidence of the 911 call.
 V. The trial court denied appellant a fair trial when it allowed evidence that Beckwith had been injured at some point prior to the shooting in this case.
 I
In his first assignment of error, Fleming argues the firearm specification must be reversed due to improper instructions and verdict form. The state conceded that both the instructions and the verdict form were not worded precisely as required in the statute. The statute requires a three-year mandatory prison term if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A) (emphasis added). The instructions and verdict form used the appropriate language with the exception that an "or" took the place of the italicized "and". Fleming argues that because the jury was only required to find one element of the offense instead of both, the three-year firearm specification must be reversed.
Initially, we note that Fleming failed to object to the instructions below and thus has waived all but plain error. State v. Adams (1980),62 Ohio St.2d 151, 153. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. The Sixth District found that when a court submits a verdict form containing a statutory description of the offense, but omitting essential elements, it results in plain error. State v. Lampkin (1996), 116 Ohio App.3d 771,774. The law clearly "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." State v. Collins (1993),88 Ohio App.3d 291, 295.
On the other hand, the Ohio Supreme Court has found that a trial court's failure to separately and specifically instruct the jury on every element of each crime does not per se constitute plain error or require reversal. Adams, supra, at 154. Instead, the record in each case must be reviewed to determine the probable impact of the omission, and to decide whether the defendant was substantially prejudiced "resulting in a manifest miscarriage of justice." Id. In Adams, the trial court failed to instruct on the level of culpability required for the offense of child endangering. Id. at 152. The supreme court found that based on the extent of injuries to the child, the individual inflicting the injuries would necessarily have known his actions would risk serious physical harm. Id. at 155. Further, because the sole defense was that the defendant was not the person responsible, the existence of recklessness was never put in issue at trial. Id.
Similarly, in the present case, neither of the elements of the firearm specification were at issue. Fleming did not deny that he both had the gun on his person and under his control before, during and after the commission of the crime, and that he used the gun to facilitate the offense. Fleming actually admitted to both of these elements on the stand. After reviewing the record, we find that the use of the word "or" instead of "and" in the instructions and on the verdict form did not result in a manifest miscarriage of justice, and therefore is not plain error. Fleming's first assignment of error is overruled.
 II
Fleming next argues the trial court erred in refusing to instruct on voluntary manslaughter. We should first point out that voluntary manslaughter is actually an inferior degree of murder, not a lesser included offense as alleged by Fleming. State v. Shane (1992),63 Ohio St.3d 630, 632. Nevertheless, the test to determine when an instruction on an inferior degree of murder should be given is the same as for a lesser included offense. A defendant is entitled to an instruction on voluntary manslaughter "when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id. at 632. This is not the same as the "some evidence" test as argued by Fleming. Instead, there must be sufficient evidence for a jury to reasonably reject the greater offense and convict on the inferior degree offense. Id. at 632-33.
The voluntary manslaughter statute provides:
 No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another ***.
R.C. 2903.03(A). The test to determine whether the provocation was reasonably sufficient has two steps. First, an objective standard must be applied which requires that the provocation was "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Id. at 635. The supreme court found that in most situations, words alone were insufficient provocation to incite the use of deadly force. Instead, the trial judge must make this determination on the specific facts of each case. Id. at 637. Only after the objective standard is satisfied, the court should proceed to examine the subjective component of whether the defendant, "in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." It is not until this point that the court examines the emotional and mental state of the defendant and the conditions and circumstances surrounding him at the time of the offense. Id. at 634. If insufficient evidence is presented to meet the objective component of the test, the trial judge must refuse to give the instruction. In that event, the court may not inquire into the subjective component. Id.
In Shane, the defendant strangled his girlfriend after she admitted to infidelities. The evidence showed that Shane woke her up and repeatedly asked her whether she had been involved with other men. After denying it several times, she finally admitted to infidelities. At that point, Shane lost control and strangled her. The court found that his girlfriend did not seriously provoke him, but instead, the anger built up in his own mind and he manufactured much of it himself. Id. at 637-38. Accordingly, the trial court found there was no reasonably sufficient serious provocation. As a result of the objective component being unsatisfied, the evidence regarding Shane's propensity to be provoked in this type of situation was irrelevant. Id. at 638.
Fleming testified in the present case that he was provoked when Beckwith walked out of the school with a male co-worker. He admitted that he did not know the man and that they were not holding hands, or even speaking to each other as they left the school. In addition, he admitted he was mistaken in his assumption that they were "together." Fleming relies on past incidents of provocation by Beckwith stemming from their failing relationship as sufficient to warrant the instruction. However, words or actions occurring days or even hours prior to the killing do not qualify as the "sudden provocation" required for a voluntary manslaughter instruction. State v. Collins (1994), 97 Ohio App.3d 438, 445, citing State v. Huertas (1990), 51 Ohio St.3d 22, 31-32; State v. Pierce (1980), 64 Ohio St.2d 281, 184. We do not find that a reasonable person would be incited to deadly violence at the sight of his girlfriend walking out of her place of employment with a co-worker.
Based on the evidence, the trial court did not err in refusing to give a voluntary manslaughter instruction as Fleming did not meet the objective test requiring that the provocation would incite an ordinary person to use deadly force. Accordingly, Fleming's second assignment of error is overruled.
 III
In his third assignment of error, Fleming contests the trial court's refusal to give an anger instruction. Fleming requested the following instruction found in OJI 411.11 regarding anger:
 To determine whether the Defendant was influenced by the effect of anger to such an extent that his mind could not and did not form a purpose to kill, you will consider the facts and circumstances relating to his condition at the time in question. If you find by a preponderance or greater weight of all the evidence that by reason of anger the mind of the Defendant was in such a condition that he was not capable of forming a purpose to kill, then he is not guilty of murder as purpose is an essential element of that offense.
 However, even if you find that the Defendant did not have the required purpose to cause the death of Beckwith, you must thereafter consider whether the Defendant is guilty of the offense of voluntary manslaughter as purpose is not an element of such an offense.
The cases cited by Fleming to support this instruction are State v. Vargo (1927), 116 Ohio St. 495, and State v. Salmon (1967), 10 Ohio App.2d 175. In both of these cases, along with a first degree murder charge, instructions were given on lesser included offenses. Both courts found that anger was not a complete defense, but instead was an affirmative defense to reduce the degree of homicide to a lesser included or inferior degree offense. Vargo, at 506; Salmon, at 180. Even in the cases cited by the state, where the anger instruction was refused, it was only contemplated for the purpose of reducing the degree of homicide. Similarly, both of those cases involved an instruction on lesser included or inferior degree offenses. State v. Montgomery (Sept. 26, 2000), Franklin App. No. 99AP-1198, unreported (defendant charged with murder but convicted of inferior degree offense of voluntary manslaughter; anger instruction not given as instructions already legally adequate to consider inferior degree offense); State v. Harris (Apr. 18, 1991), Mahoning App. No. 89 CA 39, unreported (defendant charged with aggravated murder but convicted of lesser included offense of murder; anger instruction not given because court found sufficient time had elapsed for anger to subside). We have found no other cases which address the application of this instruction.
As addressed previously, a voluntary manslaughter instruction was not warranted under the facts of this case. In addition, Fleming has not alleged error in the court's failure to instruct on involuntary manslaughter. As a result, we find that no lesser included or inferior degree offense could have appropriately been instructed in this case. Even if we were to find that the evidence warranted the above anger instruction, it would be futile to allow an instruction that cannot be applied by the jury. It is inconceivable that this instruction was meant to allow anger to result in a complete defense to the charge of murder. The supreme court says as much when it explains that anger is not a complete defense in Vargo. Therefore, we find that the trial court did not err in refusing to instruct the jury on the anger defense. Fleming's third assignment of error is overruled.
 IV
In his fourth assignment of error, Fleming alleges that the 911 tape recorded six weeks prior to Beckwith's death should not have been played or admitted at trial. On the tape, Fleming can be heard saying to Beckwith "I'll kill your ass" at least ten times. Fleming argues the tape was other act evidence inadmissible under Evid.R. 404(B) and R.C.2945.59. In this regard, Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Similarly, R.C. 2945.59 states:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Several courts have allowed evidence of defendant's prior threats to the victim to be admissible under Evid.R. 404(B) and R.C. 2945.59. See State v. Sargent (1998), 126 Ohio App.3d 557, 568 (finding testimony from another witness that defendant had threatened to burn the victim's home admissible in the arson trial); State v. Bruno (Feb. 8, 2001), Cuyahoga App. No. CR-375467A, unreported, at p. 4 (allowing evidence that the defendant threatened to kill the murder victim several weeks prior to the death); State v. Blankenship (Dec. 9, 1998), Summit App. No. 18871, unreported, at p. 5 (admitting evidence of prior threats of physical harm to show absence of mistake or accident); State v. Dancy (Sept. 1, 1995), Greene App. No. 94-CA-24, unreported, at pp. 6-7 (allowing evidence that defendant specifically told victim "I am going to kill you" and that he was going to "shoot someone" in a murder case); State v. Morris (Feb. 13, 1989), Butler App. No. CA88-06-081, unreported, at p. 4 (holding that prior threats directed toward murder victim several months before her death were admissible to show intent and absence of mistake or accident).
In addition, the Ohio Supreme Court case of State v. Kinley (1995),72 Ohio St.3d 491 is factually similar to the present case. In Kinley, the trial court allowed the tape of a 911 call made by the murder victim's husband where the defendant can be heard shouting at the victim and threatening her. The supreme court found that under Evid.R. 403(A), the prejudicial effect of the tape did not outweigh its probative value. Admittedly, the 911 tape in Kinley was recorded only two days before the victim's death, but the above-cited cases admitted threats which occurred up to several months prior to the victim's death. Id. at 497.
The threats heard on the 911 tape in this case were admissible to show Fleming's motive and intent. And, as in Kinley, the prejudice does not outweigh the probative value of the tape. We recognize that the admissibility of other acts evidence should be limited due to the danger that the jury will convict the defendant solely because it assumes the defendant has a propensity to commit criminal acts. State v. Schaim (1992), 65 Ohio St.3d 51, 59. On the other hand, we must also note that when the evidence is within the rules, its admission is within the sound discretion of the trial court, and will not be disturbed absent an abuse of that discretion. Dancy, supra, at p. 7. We do not find that the trial court abused its discretion in allowing the 911 tape to be played during the trial and admitted into evidence. Fleming's fourth assignment of error is overruled.
 V
Finally, Fleming contests admission of evidence of the victim's previous injuries. During the testimony of Beckwith's co-worker, the state elicited testimony that the co-worker noticed a few cuts on Beckwith during the month of September, the same month that the 911 call at issue in the previous assignment of error was made. Interestingly, the trial court was careful not to allow any other evidence regarding the events that occurred the night of the 911 call, which were the subject of a prior case against Fleming. Consequently, there was no evidence that Fleming inflicted those injuries. Fleming argues that with the admission of the 911 tape occurring on September 14 and the co-worker's testimony that she saw cuts on Beckwith in September, the jury was free to speculate that the defendant caused those injuries. At trial, the defense objected that the testimony about the cuts was improper prior act testimony. On appeal, however, Fleming argues that the evidence was irrelevant and prejudicial.
Because the issue was not raised on appeal, we will not address whether evidence of the events of September 14 was admissible under Evid.R. 404(B). Instead, we need only focus on the relevance and potential prejudice of the co-worker's testimony about Beckwith's cuts. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While not passing judgment on whether the origin of the cuts would be admissible, we do not see how the evidence of Beckwith's cuts is relevant to prove Fleming murdered her when the origin was left to speculation. Therefore, we find that the testimony was irrelevant and the trial court committed error by admitting it.
Having determined the testimony was irrelevant, we must now consider whether the error in admitting it was prejudicial or harmless. The improper admission of evidence is harmless if there is no reasonable possibility that the evidence contributed to the accused's conviction. State v. Smith (1989), 49 Ohio St.3d 137, 143. Additionally, we must determine "if those errors had not occurred, [whether] the jury or other trier of the facts would probably have made the same decision." Cappara v. Schibley (1999), 85 Ohio St.3d 403, 709 N.E.2d 117, 122. In order to declare the error harmless, we must find that it was harmless beyond a reasonable doubt. Id.
There is no dispute in this case that Fleming intentionally shot Beckwith. Fleming has not claimed that his actions were merely negligent. Prior evidence that allows the jury to speculate that he may have harmed her in the past would not provide any evidence to the jury that it does not already know: Fleming was capable of harming Beckwith. In any event, we do not find beyond a reasonable doubt that the jury would have come to a different conclusion had the evidence not been admitted. Although we do not find any relevance in the testimony, we also do not see any prejudice. Accordingly, we find the trial court's error in admitting the testimony was harmless. Fleming's fifth assignment of error is overruled.
WOLFF, P.J., and GLASSER*, J., concur.
* Honorable George M. Glasser, Retired from the Sixth District Court of Appeals, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.