OPINION *Page 2 
{¶ 1} Defendant-appellant Jennifer Heimbuch Slater appeals her conviction and sentence in the Ashland County Court of Common Pleas on one count each of improperly furnishing firearms to a minor, in violation of R.C. 2923.21(A)(3), contributing to the delinquency of a minor, in violation of R.C. 2919.24(A)(2). Plaintiff-appellee is the State of Ohio.
 STATMENT OF THE FACTS AND CASE {¶ 2} On August 11, 2005, Appellant purchased a shotgun for her twelve year-old son Sean from the Fin, Feather and Fur store in Ashland, Ohio. At the store, the salesman discussed with Appellant and her son the different types of shotguns for hunting deer. The salesman recommended a specific firearm: a 20 gauge New England single shot shotgun with a rifled barrel and iron sights. He also recommended Sabot slugs, a specific ammunition for hunting.
 {¶ 3} Appellant gave the firearm to Sean to store in his bedroom closet while Appellant kept the ammunition in a dresser drawer in her bedroom.
 {¶ 4} Shortly after purchasing the rifle, Appellant took Sean to the home of Artie and Tisha Fraley, family friends. Artie took Sean out toward the back of the property and taught Sean how to use his shotgun, including loading, aiming, and shooting. It was anticipated Artie would take Sean hunting when deer season opened. Sean planned to take the free hunter safety course offered through the Loudonville Junior High School.
 {¶ 5} On August 22, 2005, the Ashland County Sheriffs Office responded to a call at Appellant's residence concerning a possible break-in. The officers searched the *Page 3 
house, and discovered the shotgun lying on the floor in Sean's bedroom. The officers determined the gun was loaded. Following the incident, Appellant confiscated the shell from the shotgun, putting it back in her dresser drawer.
 {¶ 6} On September 3, 2005, while Appellant was out running errands, Sean accidentally shot a friend with the firearm while in Appellant's bedroom. The Ashland County Sheriff's Office responded to the call Appellant was absent from the residence at the time of the shooting.
 {¶ 7} Sean later admitted to the charge of negligent homicide, and was adjudicated a delinquent child.
 {¶ 8} On April 28, 2006, Appellant was indicted on the charges of improperly furnishing a firearm to a minor, in violation of R.C.2923.21(A)(3), and contributing to the delinquency of a minor, in violation of R.C. 2919.24(A)(2).
 {¶ 9} Appellant waived a trial by jury, and the matter proceeded to a bench trial. At the close of the State's case, the defense moved for a judgment of acquittal pursuant to Criminal Rule 29 as to both counts. The trial court overruled the motion.
 {¶ 10} Following the close of evidence, the trial court entered verdicts finding Appellant guilty of both charges, and sentenced Appellant to community control sanctions, including jail, a stay at Orianna House, counseling, fines and costs.
 {¶ 11} Appellant now appeals, assigning as error:
 {¶ 12} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT BY ADMITTING IRRELEVANT, CUMULATIVE EVIDENCE TENDING TO MERELY ATTACK APPELLANT'S CHARACTER AND *Page 4 
FITNESS AS A MOTHER RATHER THAN TENDING TO MAKE A FACT AT ISSUE MORE OR LESS PROBABLE.
 {¶ 13} "II. THE TRIAL COURT ERRED BY JUDICIALLY IMPOSING THE REQUIREMENT THAT A MINOR BE LICENSED TO HUNT AT THE TIME HE IS FURNISHED A FIREARM IN ORDER FOR THE LAWFUL HUNTING PURPOSES EXCEPTION CONTAINED IN OHIO REVISED CODE SECTION 2923.21(A)(3) TO APPLY.
 {¶ 14} "III. THE TRIAL COURT'S VERDICTS WERE NOT SUSTAINED BY SUFFICIENT EVIDENCE."
 I. {¶ 15} In the first assignment of error, Appellant argues the trial court abused its discretion in admitting irrelevant, cumulative evidence.
 {¶ 16} Initially, we note the admission of evidence is left to the sound discretion of the trial court. State v. Kinney (1995),72 Ohio St.3d 491, 497. As such, a decision may not be overturned by a reviewing court absent an abuse of that discretion. Peters v. Ohio State LotteryComm. (1992), 63 Ohio St.3d 296, 299. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 17} Appellant cites Ohio Rules of Evidence 401 and 402, stating:
 {¶ 18} "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. Rule 401 *Page 5 
 {¶ 19} "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible." Evid. R. Rule 402
 {¶ 20} Appellant was indicted on the charges of furnishing a firearm to a minor, in violation of R.C. 2923.21(A)(3), and contributing to the unruliness or delinquency of a minor, in violation of R.C.2919.24(A)(2). The statutes read:
 {¶ 21} 2923.21 Improperly furnishing firearms to a minor
 {¶ 22} "(A) No person shall do any of the following:
 {¶ 23} "* * *
 {¶ 24} "(3) Furnish any firearm to a person who is under eighteen years of age or, subject to division (B) of this section, furnish any handgun to a person who is under twenty-one years of age, except for lawful hunting, sporting, or educational purposes, including, but not limited to, instruction in firearms or handgun safety, care, handling, or marksmanship under the supervision or control of a responsible adult;"
 {¶ 25} "2919.24 Contributing to unruliness or delinquency
 {¶ 26} "(A) No person, including a parent, guardian, or other custodian of a child, shall do any of the following:
 {¶ 27} "* * *
 {¶ 28} "(2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022
of the Revised Code, or a delinquent child, as defined in section2152.02 of the Revised Code;" *Page 6 
 {¶ 29} Appellant argues the trial court abused its discretion in allowing the State's witnesses to testify as to matters irrelevant to the charges. Specifically, appellant cites the following testimony of Detective Scott Smart:
 {¶ 30} "Q. Detective Smart, I'm going to hand you what has been marked as State's Exhibit 2 and State's Exhibit 3.
 {¶ 31} "A. (Nod indicating yes).
 {¶ 32} "Q. I'd ask you to take a look at those and — and tell me if you recognize what those are?
 {¶ 33} "A. Those — these are photographs that depict the Defendant's juvenile son's room.
 {¶ 34} "* * *
 {¶ 35} "Q. What does the sign on the door say?
 {¶ 36} "* * *
 {¶ 37} "Q. What does the sign say, Detective Smart?
 {¶ 38} "A. The sign is a red and white sign. It says, "No Trespassing Violators Will Be Shot Survivors Will Be Shot Again."
 {¶ 39} "* * *
 {¶ 40} "Q. The one you're currently testifying about is State's Exhibit 3?
 {¶ 41} "A. That's correct.
 {¶ 42} "Q. And you were indicating that there were various items contained on the shelf; is that correct?
 {¶ 43} "A. Yes, ma'am.
 {¶ 44} "Q. Was there any particular reason that you photographed that shelf? *Page 7 
 {¶ 45} "A. Yes, there was.
 {¶ 46} "Q. What was that reason?
 {¶ 47} "A. Because of the collection of liquor bottles that are assembled on the shelf.
 {¶ 48} "Mr. Kearns: Objection, relevance.
 {¶ 49} "The Court: Wish to be heard?
 {¶ 50} "Ms. Kellogg: Again, Your Honor, this is a 12, going on 13 year old, who is collecting liquor bottles in his bedroom. Again, they're out in the open, and it goes to the mother — or the child's mindset, and, therefore, the mom's guilt in acting in a way to cause or contribute to the unruliness or delinquency of a minor.
 {¶ 51} "Mr. Kearns: Your Honor, as far as the — the charge in the Bill of Particulars, my client knowing of him having a liquor bottle collection was not an element to the offense. As far as him having these bottles going towards his — contributing to his delinquency as such, I would renew my objection as far as this being a relevant piece of potential evidence.
 {¶ 52} "Ms. Kellogg: Your Honor, may I be heard?
 {¶ 53} "The Court: Give me one second to look at the Bill of Particulars.
 {¶ 54} (Brief pause).
 {¶ 55} "The Court: There is an allegation in the indictment and in the Bill of Particulars the Defendant acted or failed to act, being aware of the victim's past behaviors and state of mind in count 2. I assume that's where you're going?
 {¶ 56} "Ms. Kellogg: Yes, Your Honor.
 {¶ 57} "The Court: Do you wish to be heard further? *Page 8 
 {¶ 58} "Ms. Kellogg: Your Honor, I believe the Court is aware, and we've certainly made the Defendant aware through the Bill of Particulars and the indictment, that that is part of the basis for the contributing, and I believe that it is relevant. We'd ask the Court to overrule the objection.
 {¶ 59} "The Court: All right. The objection's overruled. The answer will stand"
 {¶ 60} Tr. at 34-39.
 {¶ 61} Appellant's son Sean testified at trial:
 {¶ 62} "Q. I want to show you — I got a picture, what I think is something you'll recognize here.
 {¶ 63} "I'm going to ask you — it's been marked as State's Exhibit 3, Sean, and I want to ask you if you can look at that and tell me if you recognize what it is, Sean?
 {¶ 64} "A. It is my — my collection of model cars, and my collection of shot glasses and liquor bottles.
 {¶ 65} "Q. And those are the liquor bottles you talked about buying on the Internet with your mom, right?
 {¶ 66} "A. Yeah.
 {¶ 67} "Mr. Kearns: I'm going to object to relevance.
 {¶ 68} "The Court: Overruled.
 {¶ 69} "Q. Sean, at some point in the time these — these are all empty bottles that are on your shelf; is that right?
 {¶ 70} "A. Yes.
 {¶ 71} "Q. Okay. I want to not crowd you here.
 {¶ 72} "At some point in time did you buy bottles that weren't empty? *Page 9 
 {¶ 73} "A. Yes, I did.
 {¶ 74} "Q. Okay. Did you ever — and you bought bottles of alcohol, right?
 {¶ 75} "A. Yes.
 {¶ 76} "Q. And at some point in time you —
 {¶ 77} "Mr. Kearns: Objection.
 {¶ 78} "The Court: Objection is?
 {¶ 79} "Mr. Kearns: Lack of foundation as far as saying he bought bottles of alcohol.
 {¶ 80} "The Court: Overruled.
 {¶ 81} "Q. You bought bottles of alcohol, and at some point in time you consumed some of that; is that true?
 {¶ 82} "A. Yes.
 {¶ 83} "Q. You consumed some vodka, right?
 {¶ 84} "A. Yes.
 {¶ 85} "Q. Okay. And some point in time your mom asked you about those particular bottles, didn't she?
 {¶ 86} "A. Yes.
 {¶ 87} "Q. Okay. And why was it that she asked you about those bottles?
 {¶ 88} "* * *
 {¶ 89} "The Court:How does this fit in the indictment?
 {¶ 90} "Ms. Kellogg: Your Honor, she is providing her child a gun when she knows he is drinking alcohol, okay? She is acting in a way to contribute to his delinquency or unruliness. She has sat back and watched how this kid has smoked *Page 10 
these herbs, drank the alcohol, sneaking out at night and she goes and gives him a gun. The relevance is that all those things should have let her know this kid was going to do something bad with that gun, aside from the fact that the law says she can't give it to him. It goes to her knowledge —
 {¶ 91} "The Court: Okay, I don't know when he was sneaking out of the house, No. 1. I don't know when that happened. I don't know if it was before or after he got the gun. The finding of the herbs and liquor bottle is after he got the gun, okay? I understand where you're going with that argument, but in the indictment it says contributing in the manner by which she stored and maintained, okay?
 {¶ 92} "Ms. Kellogg: Uh Huh.
 {¶ 93} "The Court: And/or supervised or failed to supervise, which is the only place I can see where this is going, and/or failed to seek the necessary firearms safety, doesn't go to that, or acted or failed to act being aware of the victim's past behaviors and state of mind.
 {¶ 94} "Ms. Kellogg: And that's where it comes in.
 {¶ 95} "The Court: Those are the two places I see it comes in.
 {¶ 96} "* * *
 {¶ 97} "Q. We were talking about you buying the alcohol and drinking it. When did that happen?
 {¶ 98} "A. It occurred at — in my bedroom at nighttime.
 {¶ 99} "Q. Okay. Let me ask this. Did it happen before you got — your mom bought you the gun?
 {¶ 100} "A. I believe it did, yes. *Page 11 
 {¶ 101} "Q. Now, what did your mom do when she found out?
 {¶ 102} "A. I believe that she poured the one that she found out into the sink.
 {¶ 103} "The Court: I didn't — didn't catch the last part, poured the one that she found out in —
 {¶ 104} "The Witness: Into the sink.
 {¶ 105} "The Court: Thank you.
 {¶ 106} "Q. Was there more than one?
 {¶ 107} "A. I believe so, yes.
 {¶ 108} "Q. Okay. She gave that bottle to the neighbors, didn't she?
 {¶ 109} "A. Yes."
 {¶ 110} Tr. at 197-205.
 {¶ 111} Jeff Keller a Deputy Ashland County Sheriff testified at trial:
 {¶ 112} "Q. And during the course of your time there, did you examine his — what appeared to be his room?
 {¶ 113} "A. Yes, ma'am.
 {¶ 114} "Q. And do you recall anything about your inspection of his room?
 {¶ 115} "A. There were several objects in the room that struck me as — should not have been — have been there.
 {¶ 116} "Q. And could you tell the Court what those were?
 {¶ 117} "A. There was a — we found a butcher knife —
 {¶ 118} "Mr. Kearns: Objection.
 {¶ 119} "A. — a shotgun —
 {¶ 120} "Mr. Kearns: Objection. *Page 12 
 {¶ 121} "The Court: You may answer.
 {¶ 122} "A. — and also bottles of what appeared to have been urine and —
 {¶ 123} "Mr. Kearns: Objection.
 {¶ 124} "The Court: Overruled.
 {¶ 125} "A. — we also found a small bag of what appeared to be at the time marijuana, but we then, you know, between smelling and talking to the mother, we confirmed it was not, so we did not take it.
 {¶ 126} "Q. Okay. Now, you said you found those items unusual; is that correct?
 {¶ 127} "A. Yes, ma'am, it's generally something you don't find in a — in a child's room."
 {¶ 128} Tr. at 110-111.
 {¶ 129} Appellant also cites testimony at trial introduced to demonstrate Sean had a "bong"-a pipe and rolling papers in his room, and Appellant allowed him to smoke a legally sold herbal home remedy to calm his nerves.
 {¶ 130} Tisha Fraley testified:
 {¶ 131} "Q. So what part — what part did the Defendant tell you about that. Did she tell you the sheriff came —
 {¶ 132} "A. The sheriff came in, looked through the house because they didn't want them to come in because they were afraid somebody would still be in the house.
 {¶ 133} "Q. That's all according to the Defendant?
 {¶ 134} "A. Yes.
 {¶ 135} "Q. Okay. *Page 13 
 {¶ 136} "A. So they went through the house, went through the rooms, and in Sean's room they found —
 {¶ 137} "* * *
 {¶ 138} "A. That the sheriff had went through the house, and they were concerned about what they found in Sean's bedroom.
 {¶ 139} "Mr. Kearns: Objection.
 {¶ 140} "The Court: Overruled.
 {¶ 141} "A. And that was the — they found a gun in his bedroom, a loaded gun.
 {¶ 142} "Mr. Kearns: Objection.
 {¶ 143} "A. And —
 {¶ 144} "The Court: Overruled.
 {¶ 145} "A. — a bong and some herbal stuff being grown that they got from the Internet.
 {¶ 146} "Mr. Kearns: Objection, relevance.
 {¶ 147} "Ms. Kellogg: Your Honor, again the State is permitted to introduce the Defendant's statement. The relevance to the Defendant's statements I think are going to bear even further when the witness testifies, but the objection is to the herbal things and the — the bong. Again, those — things and the Defendant's knowledge of those things and telling another witness about them all goes to her child's state of mind, which is relevant to her contributing to the delinquency or his unruliness.
 {¶ 148} "The Court: Overruled. The answer will stand.
 {¶ 149} "Q. You may continue, or — or is that — that's the sum of what she told you? *Page 14 
 {¶ 150} "A. Yes.
 {¶ 151} "Q. Okay. What was her reaction when she's telling you this? How did she seem to you?
 {¶ 152} "A. She seemed upset that they would even question —
 {¶ 153} "Mr. Kearns: Objection, speculation.
 {¶ 154} "The Court: Sustained.
 {¶ 155} "Q. She was telling you this in person?
 {¶ 156} "A. Yes.
 {¶ 157} "Q. Okay. Did she tell you at all how she felt about the sheriff being there?
 {¶ 158} "A. She had said that — oh, I don't know how to put it. She had said that they were questioning her because of the gun and everything else they found in the room, you know, what all that stuff was there for, and she did not think that that was proper.
 {¶ 159} "Q. And that's what she told you?
 {¶ 160} "A. Yes."
 {¶ 161} Tr. at 71-74.
 {¶ 162} Appellant also contests the evidence introduced to demonstrate she allowed her son to remove a padlock which fit over the trigger mechanism of the gun in order to allay his fear of intruders breaking into the home. The State further introduced paperwork from the sale of the firearm warning purchasers to safely store and handle the firearm. *Page 15 
 {¶ 163} As a general rule, in a trial to the court, the judge is presumed to consider only competent, relevant and material evidence, disregarding any irrelevant evidence. State v. Benner (1988),40 Ohio St.3d 301.
 {¶ 164} Upon review of the testimony set forth above, we cannot find the trial court abused its discretion in admitting the same, as the evidence bears some, albeit limited, relevance as to whether Appellant acted recklessly in a way tending to contribute to the delinquency of her son. The evidence had some tendency to make it more probable Appellant acted recklessly in giving Sean a gun to store in his bedroom.
 {¶ 165} Accordingly, Appellant's first assignment of error is overruled.
 II. {¶ 166} In the second assignment of error, Appellant argues the trial court erred in the application of R.C. 2923.21(A)(3). Specifically, Appellant asserts the trial court judicially imposed the requirement a minor be licensed to hunt at the time he is furnished a firearm in order for the lawful hunting purposes exception to apply.
 {¶ 167} As stated above, the statute reads:
 {¶ 168} "(A) No person shall do any of the following:
 {¶ 169} "* * *
 {¶ 170} "(3) Furnish any firearm to a person who is under eighteen years of age or, subject to division (B) of this section, furnish any handgun to a person who is under twenty-one years of age, except forlawful hunting, sporting, or educational purposes, including, but not limited to, instruction in firearms or handgun safety, care, handling, or marksmanship under the supervision or control of a responsible adult;" (Emphasis added.) *Page 16 
 {¶ 171} Appellant cites R.C. Section 2901.04 requiring sections defining offenses or penalties to be strictly construed against the state, and liberally construed in favor of the accused.
 {¶ 172} Appellant maintains Section 2923.21 does not require the minor to be licensed to hunt at the time the firearm is furnished; only that the firearm be furnished for lawful hunting purposes. We agree.
 {¶ 173} However, assuming arguendo the trial court erred in its application of the law, Appellant has not demonstrated prejudice resulting from the alleged error. The statute clearly requires the firearm be furnished for lawful hunting purposes at the time offurnishing, not at the time of purchase. Here, Appellant has not demonstrated the firearm was to be used for lawful hunting purposes at the time she gave it to her son. Rather, the evidence produced at trial demonstrates the gun was purchased for hunting at some uncertain point in the future, and Appellant gave the gun to her son to store in his bedroom, because he was afraid of an intruder. Based upon the above, Appellant has not demonstrated, but for the alleged error, the outcome of the trial would have been otherwise; therefore, the alleged error is harmless.
 {¶ 174} Appellant's second assignment of error is overruled.
 III. {¶ 175} In the third assignment of error, Appellant argues the trial court's verdict was not sustained by the sufficiency of the evidence.
 {¶ 176} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the *Page 17 
defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 177} As discussed in the second assignment of error above, the testimony presented at trial demonstrates Appellant furnished the firearm to her son to keep in his bedroom, because he was afraid of intruders. Although Appellant argues she intended the firearm to be used for hunting at some time in the future, the firearm was not used for lawful hunting purposes at the time of furnishing.
 {¶ 178} Further, as to the contributing to the delinquency of a minor charge, the evidence introduced at trial established Appellant provided the minor with a firearm, and allowed him to keep the firearm next to his bed with full access to the firearm. She allowed her son to remove the trigger lock to allay his fear of an intruder breaking into their home. Appellant knew her son had access to the firearm on the date of the incident, even though she was absent from the residence. Appellant knew her son had previously retrieved shells for the firearm from her dresser drawer but failed to properly secure them thereafter. Additional evidence suggested Appellant allowed her son to smoke herbs to calm his fears, and she was aware he had purchased and used alcohol in the past.
 {¶ 179} Based upon the above, viewing the evidence in a light most favorable to the prosecution, the trial court did not irrationally conclude the essential elements of the crimes charged were proven beyond a reasonable doubt.
 {¶ 180} The third assignment of error is overruled. *Page 18 
 {¶ 181} Appellant's conviction in the Ashland County Court of Common Pleas is affirmed.
 Hoffman, J. Gwin, P.J. and Edwards, J. concur. *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's conviction in the Ashland County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1